# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

JASON ZDEBSKI,

     Plaintiff,

               No. 2:12-cv-12392

 vs.             Hon. Gerald E. Rosen

CHAD C. SCHMUCKER, *in his individual and official capacity*, KRISTIE ETUE, *in her individual and official capacity*, PROSECUTING ATTORNEY'S COORDINATING COUNCIL, JOHN DOES 1-20, and ROE CORPORATIONS 21-30,

     Defendants.

_____/

## OPINION AND ORDER PARTIALLY GRANTING DEFENDANTS' MOTION TO DISMISS OR ALTERNATIVELY FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This case presents interesting questions of unintended, but perhaps unavoidable, adverse consequences arising out of the use and interpretation of the State of Michigan's criminal conviction reporting system. That Plaintiff suffered some harm as a result is not much in doubt. Unfortunately, whether that injury is redressable against the Defendants named in Plaintiff's Complaint here is far more dubious, as the Court explains in some detail in this Opinion.

1

On June 1, 2012, Plaintiff Jason Zdebski commenced this suit as a representative for a putative class of similarly aggrieved individuals alleging violations of his rights under the Fourth and Fourteenth Amendments to the United States Constitution, as well as a violation of Michigan common law.  Plaintiff, who pled no contest to the charge of Criminal Sexual Conduct in the Fourth Degree through force/coercion (M.C.L. § 750.520e(1)(b)) on August 7, 2003, generally alleges that the statutorily created entity responsible for crafting criminal record reporting codes and two state officials overseeing the state entities responsible for reporting arrest and conviction information caused him to twice be misidentified as the wrong kind of sex offender.

On October 25, 2012, Defendants moved to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), or alternatively for summary judgment under Rule 56.  Having reviewed and considered Defendants' Motion and supporting brief, Plaintiff's response thereto, and the entire record of this matter, the Court has determined that the relevant allegations, facts, and legal arguments are adequately presented in these written submissions, and that oral argument would not aid the decisional process.  Therefore, the Court will decide this matter "on the briefs."  See Eastern District of Michigan Local Rule 7.1(f)(2). The Court's Opinion and Order is set forth below.

## II. FACTUAL BACKGROUND

**A.      The Prosecuting Attorney's Coordinating Council**

To understand this case, it is necessary to first understand the role and nature of the Prosecuting Attorney's Coordinating Council (PACC or Council) and the Codes it promulgates.  Created in 1972 "as an autonomous entity in the department of attorney general," M.C.L. § 49.103(1), PACC is charged with "keep[ing] the prosecuting attorneys and assistant prosecuting attorneys of the state informed of all changes in legislation, law and matters pertaining to their office, to the end that a uniform system of conduct, duty and procedure is established in each county of the state."  § 49.109.

The Council consists of five members: Michigan's Attorney General (or his designated representative), the president of the Prosecuting Attorneys Association of Michigan (PAAM) (a non-profit, voluntary association of prosecuting attorneys serving in Michigan), and three prosecuting attorneys from counties of various size, each of whom are elected by PAAM.  § 49.104(1).  Serving on the Council does "not constitute holding a public office" and PACC members are "not required to take and file oaths of office before serving on the Council.  § 49.105.  Council members serve without compensation, but are entitled to actual expenses in attending meetings and in performing their official duties.  § 49.108.

PACC does "not have the right to exercise any portion of the sovereign

3

power of the state." § 49.105.  In short, its powers are limited to the language of its authorizing statute.  The Council may:

> (a)    Enter into agreements with other public or private agencies or organizations to implement the intent of [PACC's authorizing] act;

> (b)    Cooperate with and assist other public or private agencies or organizations to implement the intent of [PACC's authorizing] act; [and]

> (c)    Make recommendations to the legislature on matters pertaining to its responsibilities under [PACC's authorizing] act.

§ 49.110.

Finally, though PACC may accept funds to defray costs, M.C.L. § 49.111, it receives funding appropriations from the Michigan Legislature as part of the Attorney General's budget.  *See, e.g.,* Michigan's Public Act 200 of 2012 (Fiscal Year 2013 appropriations bill).

## B.    PACC Codes

Before 1986, Michigan's criminal conviction reporting system relied only upon written descriptions and/or citations to Michigan's Compiled Laws.  (Ex. 1 to Def's Mtn., Dkt. # 9-1, at ¶ 9).  This system led to inaccuracies for two reasons: (1) written descriptions varied from police agency to policy agency and from court to court; and (2) citations to the Michigan Compiled Laws were not always specific enough to identify which crime was committed.  (*Id.*)  For example, M.C.L. § 400.60(1), a provision of Michigan's Social Welfare Act criminalizing fraudulent

4

conduct in connection with obtaining public assistance, does not provide different subsections for misdemeanor and felony counts. (*Id.*). Under the old reporting system, therefore, a general reference to this provision alone would not provide sufficient information regarding the conviction's severity.

The Michigan legislature revised this system 1986, placing the responsibility for reporting arrest information on the arresting law enforcement agency and the responsibility for reporting conviction information on the sentencing court. (*Id.* at ¶ 8) (citing M.C.L. § 28.243, § 769.16a). Due to this revision, the Michigan State Police, the State Court Administrator's office and PAAM agreed to standardize crime reporting procedures by switching to a system driven by what are commonly referred to as PACC Codes. (*Id.* at ¶ 10). PACC initially developed this system of codes for prosecuting attorneys to identify criminal charges in PACC's warrant manual, which contained standard charging language for use by prosecuting attorneys. (*Id.* at ¶ 7). PACC Codes are now used to identify charges on arrest reports, prepare warrants and charging documents, and on judgments of sentence and criminal history reports. (*Id.* at ¶ 10).

PACC Codes are not and never were intended to exactly correspond to the citation system of the Michigan Compiled Laws. (*Id.* at ¶ 12). First, as indicated above, not all crimes in Michigan specifically correspond to a specific M.C.L. provision. (*Id.* at ¶ 12(a)). Second, some statutes provide a general penalty

5

provision without expressly enumerating specific violative acts. (*Id.* at ¶ 12(b)) (citing the general penalty provision of Michigan's Wildlife Conservation Act, M.C.L. § 324.40118(1)). Third, Michigan law permits prosecutors to charge under alternative theories of guilt and a person convicted under a multiple variables charge will not have the conviction reported under a code that identifies the specific subsection of the statute. (*Id.* at ¶ 12(c) (citing M.C.L. § 750.520b). Fourth, M.C.L. citations frequently change. In order to maintain consistency in criminal history records, PACC Codes do not change. (*Id.* at ¶ 12(d)).

As set forth in more detail below, Plaintiff pled no contest to Criminal Sexual Conduct in the Fourth Degree for an act involving force/coercion through surprise, M.C.L. § 750.520e(1)(b)(v). The Michigan Legislature has amended the Criminal Sexual Conduct in the Fourth Degree provision several times in the past 30 years -- 1983, 1988, 1994, 1996, 2000, 2002, and 2007. (*Id.* at ¶ 13). The legislative history of this provision shows the problem with trying to mirror PACC Codes with the exact M.C.L. provision in order to maintain historical criminal records.

Prior to 1994, M.C.L. § 750.520e(1)(a) regulated Criminal Sexual Conduct in the Fourth Degree by use of force/coercion. M.C.L. § 750.520e(1)(a) (effective April 1, 1975). The PACC Code assigned for this crime is "750.520E1A." (Def's Ex. 1 to Mtn., Dkt. # 9-1, at ¶ 14). In 1994, the Michigan legislature inserted a

6

subsection to cover sexual contact with a minor at least 13 years of age and under 16 years of age by an actor more than 5 or more years older -- doing so at the old M.C.L. provision for force/coercion.   M.C.L. § 750.520e(1)(a) (effective Oct. 1, 1994).   Consequently, force/coercion was recodified at M.C.L. § 750.502e(1)(b). Because the PACC Code for force/coercion (750.520E1A) did not change, it now resembles the M.C.L. citation for sex with a minor between 13 and 16 (M.C.L. § 750.520e(1)(a)).   This change is the crux of Plaintiff's lawsuit; Plaintiff's theory of liability is premised on *others* conflating the PACC Code for force/coercion with the M.C.L. citation for sex with a minor between 13 and 16.

## C.   Plaintiff's Conviction and Subsequent Events

On August 7, 2003, Plaintiff pled no contest to Criminal Sexual Conduct in the Fourth Degree for an act involving force/coercion through surprise, M.C.L. § 750.520e(1)(b)(v), for allegedly exposing his genitalia to a police officer.   (Plf's Compl., Dkt. #1, at ¶¶ 30, 32).   The state court entered a judgment of sentence that day referencing "750.520E1A" in the "CHARGE CODE(S) MCL CITATION/PACC CODE" section.   (*Id.* at ¶ 33; Ex. A to Plf's Resp., Dkt. # 12-2, at 1).   Plaintiff's criminal history report (ICHAT) reflects Plaintiff's conviction slightly differently: he "pled guilty" to "MCL 750.520E1A, MISDEMEANOR CRIMINAL SEXUAL CONDUCT 4TH DEGREE (FORCE OR COERCION)." (Ex. C to Plf's Compl., Dkt. # 1-3, at 1).   As set forth above, M.C.L. §

750.520e(a)(1) criminalizes sexual relations with a minor between 13 and 16, but the PACC Code for force/coercion is "750.520E1A." Plaintiff was not charged with and did not plead guilty to having sexual contact with a minor. (Plf's Compl., Dkt. # 1, at ¶ 34). According to Plaintiff, this reference to 750.520E1A is a "mistake" due to "an incorrect PACC Code promulgated by Defendants." (*Id.* at ¶ 33).

Plaintiff did not become aware of what he deems a "mistake" for several years. In 2006, Plaintiff moved to Chicago, Illinois. (*Id.* at ¶ 36). He promptly notified the local police of his force/coercion conviction, who advised that he did not have to register as a sex offender. (*Id.* at ¶¶ 33, 38). Therefore, Plaintiff did not register as a sex offender. (*Id.* at ¶ 38). Four years later, in 2010, several U.S. Marshals arrested Plaintiff for failing to register as a sex offender in Illinois. (*Id.* at ¶ 40). During a subsequent bail hearing, the prosecutor announced that Plaintiff "was a child molester" and that he had "molested a minor in Michigan." (*Id.* at ¶ 41). This resulted in an Illinois judge finding cause to set Plaintiff's bond at $125,000.00. (*Id.* at ¶ 42).

The Illinois State Police (ISP) apparently also came to the conclusion that Plaintiff was convicted of a crime relating to sexual relations with a minor. On June 7, 2010, the ISP informed Plaintiff that it was "standing by" its previous determination that his conviction in Michigan was the equivalent of Aggravated

8

Criminal Sexual Abuse involving a victim who is at least 13 years of age but under 17 years of age.  (Ex. D to Plf's Resp., Dkt. # 12-5) (citing 720 Ill. Comp. Stat. 5/12-16-d (now recodified at 5/11-1.60(d)).  In making this determination, the ISP indicated that "[a]ll information provided to ISP indicates [Plaintiff] was convicted of . . . 750.520E1A."  (*Id.*).

Plaintiff then petitioned an Oakland County Circuit Court Judge to correct his conviction records.  (Plf's Compl., Dkt. #1, at ¶ 43).  During the hearing on Plaintiff's Motion, the prosecutor concurred in the relief requested and the Court entered the following order:

> IT IS HEREBY ORDERED that Defendant Jason Zdebski's sentence be corrected to reflect the actual crime he was convicted of, Criminal Sexual Conduct in the Fourth Degree through force or coercion, involving sexual contact through concealment or by the element of surprise.  MCL 750.520e(1)(b)(v).
>
> IT IS FURTHER ORDERED that Defendant Jason Zdebski was not convicted of MCL 750.520e(1)(a), and as such, any mention of this offense in the records associated with this action shall be stricken, including in the sentencing investigation report.

(May 2, 2012 Order, Circuit Court Judge Rae Lee Chabot).[1]

After entry of this Order, Plaintiff asserts that his conviction was then reported "as having been convicted of having sexual relations with an incapacitated person."  (Plf's Compl., Dkt. #1, at ¶ 44; *see also* M.C.L. § 750.520e(c) (fourth

---

[1] Though neither party provided this court record, it is well established that "[f]ederal courts may take judicial notice of proceedings in other courts of record." *Harbison v. Bell*, 408 F.3d 823, 842 (6th Cir. 2005).

degree sexual conduct "[w]hen the actor knows or has reason to know that the victim is mentally incapable, mentally incapacitated, or physically helpless.")). Plaintiff again attributes this "due to [the] faulty PACC code system instituted and maintained by Defendants." (Plf's Compl., Dkt. #1, at ¶ 44). Though Plaintiff's counsel attests that he "noticed that . . . the wrong conviction was coded onto the criminal sheet," (Ex. F to Plf's Resp., Dkt. # 12-7, at ¶ 6), the amended judgment entered by the Court on May 8, 2012 indicates Plaintiff's conviction as "CSC 4th (FORCE/COERCE) ELEMENT," citing "750.520E1B(V)."[2]

Due to this "mistake," Plaintiff asserts that his "life and career has been ruined. . . . . He has been stigmatized in the community and lost his job as a result. To this day, [he] can't live near a school." (Plf's Compl., Dkt. #1, at ¶ 45). Finally, he claims that "the Illinois Sex Offender Registry continues to list [Plaintiff] as a child sex offender based on the faulty Michigan criminal recording system." (*Id.* at ¶ 46; *see also* Ex. C to Plf's Resp., Dkt. # 12-4).

D.    **Plaintiff's Allegations**

Plaintiff's four-count Complaint alleges three Constitutional violations under 42 U.S.C. § 1983 -- substantive due process, procedural due process, and a 14th Amendment "customs, practices, acquiescence, supervision, training, hiring, [and] retention" claim -- and one count of gross negligence/negligence. The nub of

---

[2] The Court again takes judicial notice of this document.

10

Plaintiff's claims is quite simple: "PACC codes are supposed to be the same as the Michigan statute under which a person was convicted." (Plf's Compl., Dkt. # 1, at ¶ 16). Because PACC Codes "have not been updated to reflect changes to the criminal statutes," Plaintiff continues, "some [PACC] codes no longer accurately reflect the crime of which a person was convicted." (*Id.* at ¶ 2).

In support of his claim that PACC Codes and M.C.L. provisions are "supposed to be identical," Plaintiff relies on a document comparing M.C.L. provisions to PACC Codes for the purpose of Michigan's Sex Offender Registration Act (SORA) (Ex. A to Plf's Compl., Dkt. # 1-1; *see also* Ex. G to Plf's Resp., Dkt. # 12-8), the State Court Administrative Office's Judgment of Sentence form that identifies "Charge Codes" as "MCL citation/PACC Code" (Ex. B to Plf's Compl., Dkt. # 1-2; *see also* Ex. A to Plf's Resp., Dkt. # 12-2), and Plaintiff's ICHAT record referenced above. (Ex. C to Plf's Compl., Dkt. # 1-3; *see also* Ex. B. to Plf's Resp., Dkt. # 12-3).

In addition to naming PACC, Plaintiff names two state officials, Chad Schmucker (State Court Administrator) and Kriste Etue (Director of the Michigan State Police), in their official and individual capacities. Plaintiff has also named twenty "John Does" and ten "Roe Corporations."

11

## III. DISCUSSION

### A.   Applicable Standards

Defendants seek dismissal of Plaintiff's Complaint for failing to state a claim under Rule 12(b)(6), and alternatively, for summary judgment under Rule 56. In support of this alternative, Defendants submitted materials outside the pleadings. Plaintiff also submitted material outside the pleadings in response. A motion to dismiss for failure to state a claim under Rule 12(b)(6) is treated as a motion for summary judgment under Rule 56 when the motion relies upon materials outside of the pleadings. *Himes v. United States,* 645 F.3d 771, 776 (6th Cir. 2011). Therefore, the Court will treat those portions of Defendants' motion that rely on the pleadings alone as seeking dismissal and those sections that rely on collateral material as seeking summary judgment.

#### 1.   Rule 12 Standard

In deciding a motion brought under Rule 12(b)(6), the Court must construe the complaint in the light most favorable to Plaintiffs and accept all well-pled factual allegations as true. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). To withstand a motion to dismiss, however, a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The factual allegations in the complaint, accepted as true,

"must be enough to raise a right to relief above the speculative level," and must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for defendant's conduct." *16630 Southfield Ltd. P'Ship v. Flagstar Bank, F.S.B.*, --- F.3d ---, 2013 WL 4081909, at *2 (6th Cir. 2013).

The Sixth Circuit has emphasized that the "combined effect of *Twombly* and *Iqbal* [is to] require [a] plaintiff to have a greater knowledge . . . of factual details in order to draft a 'plausible complaint.'" *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011) (citation omitted). Put another way, complaints must contain "plausible statements as to when, where, in what or by whom," *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 373 (6th Cir. 2011), in order to avoid merely pleading "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

## 2.   Rule 56 Standard

Summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As the Supreme Court has explained, "the

plain language of Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). In addition, where a moving party -- here, Defendants -- seeks an award of summary judgment in its favor on a claim or issue as to which it bears the burden of proof at trial, this party's "showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States,* 799 F.2d 254, 259 (6th Cir. 1986) (internal quotation marks, citation, and emphasis omitted).

In deciding a motion brought under Rule 56, the Court must view the evidence in a light most favorable to the nonmoving party. *Pack v. Damon Corp.,* 434 F.3d 810, 813 (6th Cir. 2006). Yet, the nonmoving party may not rely on mere allegations or denials, but must "cit[e] to particular parts of materials in the record" as establishing that one or more material facts are "genuinely disputed." Fed. R. Civ. P. 56(c)(1). But, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack,* 434 F.3d at 814 (alteration, internal quotation marks, and citation omitted).

### 3.    The Appropriateness of Summary Judgment Pre-Discovery

Plaintiff first raises a procedural objection to Defendants' motion, namely that "[a]n opportunity for discovery is likely to produce evidence supporting the Plaintiff's position."  (Plf's Resp., Dkt. # 12, at 9).  Accordingly, Plaintiff cites to *CenTra, Inc. v. Estrin*, 538 F.3d 402 (6th Cir. 2008), for the proposition that "a grant of summary disposition (sic) is premature before discovery on a disputed issue is complete."  (Plf's Resp., Dkt. # 12, at 9).  *CenTra* does not so hold.

In *CenTra*, the Sixth Circuit addressed what is now Federal Rule of Civil Procedure 56(d) (formally Rule 56(f)), which provides that "a nonmovant may request additional discovery prior to the granting of summary judgment . . . [i]f a party . . . shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition."  538 F.3d at 419 (citation omitted).  There, the Defendant moved for summary judgment and, in response, the plaintiff filed a motion and affidavit under this Rule detailing its discovery plan.  *Id.* at 421.  In finding that the district court abused its discretion by denying this request, the Sixth Circuit noted that the plaintiff "filed an affidavit outlining the evidence that it would seek in discovery [that was] . . . not too vague and identifies information sought by [plaintiff] 'essential to justify its opposition' to summary judgment."  *Id.* (citation omitted).

Unlike the plaintiff in *CenTra*, Plaintiff did not comply with Rule 56(d); he

15

neither filed an appropriate motion under Rule 56(d) nor submitted an affidavit indicating that he cannot present facts essential to justify his opposition to Defendants' Motion for Summary Judgment.   Accordingly, his argument that Defendants' motion is premature is without merit.   *Gettings v. Bldg. Laborers Local 310 Fringe Benefits Fund*, 349 F.3d 300, 305 (6th Cir. 2003) ("Where a party opposing summary judgment and seeking a continuance pending completion of discovery fails to take advantage of the shelter provided by Rule 56[d] by filing an affidavit, there is no abuse of discretion in granting summary judgment if it is otherwise appropriate.") (citation omitted).[3]

**B.    Plaintiff's Section 1983 Claims**

**1.    Eleventh Amendment Immunity**

Plaintiff asserts three separate claims under 42 U.S.C. § 1983.   As a preliminary matter, the Eleventh Amendment disposes of most of Plaintiff's claims.   The Eleventh Amendment bars suits against a state, its agencies, and its officials sued in their official capacities for damages unless the state has waived its sovereign immunity or unequivocally consented to be sued.   *Cady v. Arenac Cnty.*,

---

[3] That this Rule could have afforded Plaintiff a different avenue for opposing Defendants' Motion under Rule 56 should not come as a surprise given his citation to *Plott v. General Motors Corporation*, 71 F.3d 1190 (6th Cir. 1995).   That case expressly notes that "to preserve the argument that the grant of summary judgment was too hasty or precluded necessary discovery, the appellant *must have complied with the strictures* of Federal Rule of Civil Procedure 56[d]."   *Id.* at 1196 (emphasis added).

16

574 F.3d 334, 342 (6th Cir. 2009); *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013) (collecting cases). "It is well established that § 1983 does not abrogate the Eleventh Amendment, and that Michigan has not consented to the filing of a civil rights suit against it in federal court." *Harrison*, 722 F.3d at 771 (internal citations omitted).

### a.   The Eleventh Amendment bars Plaintiff's claims against PACC

PACC is a state entity entitled to Eleventh Amendment immunity if it is properly considered an "arm of the State." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977). In a perfunctory manner, Defendants claim that PACC "is, at best, a State agency entitled to Eleventh Amendment immunity." (Def's Mtn., Dkt. # 9, at 17) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984), and *Seminole Tribe v. Florida*, 517 U.S. 44 (1995)). Simply announcing that PACC is a "State agency" does not automatically entitle PACC to Eleventh Amendment immunity. Rather, this Court must examine whether PACC is an "arm of the state" or just a "political subdivision." *Pucci v. Nineteenth Dist. Court*, 628 F.3d 752, 760 (6th Cir. 2010). "[T]he entity asserting Eleventh Amendment immunity has the burden to show that it is entitled to immunity, *i.e.,* that it is an arm of the state." *Gragg v. Ky. Cabinet for Workforce Dev.,* 289 F.3d 958, 963 (6th Cir. 2002). The Sixth Circuit has laid out four factors to consider this question:

> (1) the State's potential liability for a judgment against the entity; (2) the language by which state statutes and state courts refer to the entity and the degree of state control and veto power over the entity's actions; (3) whether state or local officials appoint the board members of the entity; and (4) whether the entity's functions fall within the traditional purview of state or local government.

*Pucci*, 628 F.3d at 760 (citation omitted). "The state's potential legal liability for a judgment against [PACC] 'is the foremost factor' to consider in [a] sovereign immunity analysis. *Lowe v. Hamilton Cnty. Dep't of Job & Family Servs.,* 610 F.3d 321, 325 (6th Cir. 2010) (citation omitted).

Examining the above four factors, this Court finds that PACC is entitled to Eleventh Amendment immunity. Turning to the first -- and foremost -- factor, the State is liable for a judgment entered against PACC. PACC is a statutorily created, autonomous entity *within* the Department of Attorney General. M.C.L. § 49.103(1). Though PACC may accept funds to defray costs, M.C.L. § 49.111, it receives funding appropriations from the Michigan Legislature as part of the Attorney General's budget. *See, e.g.,* Michigan's Public Act 200 of 2012 (Fiscal Year 2013 appropriations bill). Most importantly, Michigan law expressly provides that a "state agency shall pay or record expenditures for . . . [c]ourt judgments, including court approved consent judgments; all settlements, awards, and claims." M.C.L. § 18.1396(1)(a). This factor weighs heavily towards finding that PACC is an arm of the state.

The second and fourth factors can be analyzed together given the structure

18

of PACC's authorizing statute -- PACC is referred to as a state entity and is empowered to carry out functions within the traditional purview of the state. Though no Michigan court (or, for that matter, federal court) has substantively described PACC, Michigan law unquestionably refers to PACC as a state entity. First, "[t]he office of prosecuting attorneys coordination is created as an autonomous entity in the department of attorney general." § 49.103(1). Second, PACC's purpose is to "keep prosecuting attorneys and assistant prosecuting attorneys *of the state* informed of all changes in legislation, law and matters pertaining to their office, to the end that a *uniform system of conduct, duty and procedure is established in each county of the state*." § 49.109 (emphasis added). Finally, PACC "shall make an annual report to the governor and to the prosecuting attorneys association of Michigan regarding its efforts to implement [its] purposes." § 49.107. Accordingly, this statutorily created entity serves statewide officials on a uniform basis, which is certainly within the purview of state -- as opposed to local government -- functions. *Cf Ernst v. Rising*, 427 F.3d 351, 365-66 (6th Cir. 2005).

There is something to be said, however, about the fact that PACC does "not have the right to exercise any portion of the sovereign power of the state." § 49.105. In short, its powers are limited to the statute's language: It may "[e]nter into agreements with other public or private agencies or organizations to

implement the intent of [PACC's authorizing] act; [c]ooperate with and assist other public or private agencies or organizations to implement the intent of [PACC's authorizing] act; and [m]ake recommendations to the legislature on matters pertaining to its responsibilities under [PACC's authorizing] act. § 49.110. Nothing in this language, however, supports an argument that PACC is a political subdivision or performs traditional local government functions.

Finally, the statutory mechanism for which Council members are chosen again favors a finding that PACC is arm of the state. PACC is composed of the Michigan Attorney General (or his designated representative), PAAM's president, and three county prosecutors elected by PAAM on an annual basis. § 49.104. All PACC members are attorneys who represent the state and are therefore individuals to whom the Eleventh Amendment clearly applies. More importantly, none of the Council's members are appointed by local officials.

Weighing these factors, and with the foremost being that the State is financially liable for any judgment entered against PACC, this Court concludes that PACC is entitled to Eleventh Amendment immunity.

### b. The Eleventh Amendment bars Plaintiff's claims against the individual defendants in their official capacities

Plaintiff's claims for monetary damages against the individual defendants are also easily dismissed. At the outset, the Court notes that Defendants did not expressly seek dismissal of the individual defendants in their official capacity on

20

this ground.   They did, however, raise it in their initial Answer to Plaintiff's Complaint.  (Defs' Answer, Dkt. # 8, at 11).   Further, a "federal court 'can raise the question of sovereign immunity sua sponte because it implicates important questions of federal-court jurisdiction and federal state comity.'"  *Cady*, 574 F.3d at 344 (citation omitted); *Mixon v. Ohio*, 193 F.3d 389, 397 (6th Cir. 1999) (a federal court "may sua sponte raise the issue of lack of jurisdiction because of the applicability of the eleventh amendment.").   Considering the dispositive nature of the Eleventh Amendment relative to these claims as well as the Court being adequately apprised of all issues material to its application, the Court finds that Plaintiff's claims for monetary damages against the two individually-named defendants in their official capacity are barred.[4]   *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 549 (6th Cir. 2004) ("[A] suit for monetary damages against an individual in his or her official capacity is deemed to be an action against the state whose officers are nominal defendants."); *see also Scott v. Michigan*, 173 F. Supp. 2d 708, 714 (E.D. Mich. 2001) (Michigan State Police is an arm of the state of Michigan entitled to Eleventh Amendment immunity); *Alford v. City of Detroit*,

---

[4] Plaintiff also asserts claims against thirty unnamed "Doe" and "Roe" Defendants. "In general, the use of unnamed defendants is not favored in the federal courts." *Searcy v. Cnty. of Oakland*, 735 F. Supp. 2d 759, 771 (E.D. Mich. 2010) (citation omitted).   Moreover, Federal Rule of Civil Procedure 4(m) applies equally to pseudonymous defendants.  *Petty v. Cnty. of Franklin, Ohio*, 478 F.3d 341, 345-46 (6th Cir. 2007).  Plaintiff has neither named nor served these unnamed Defendants. Accordingly, the Court will dismiss all claims against the unnamed Defendants without prejudice.

657 F. Supp. 2d 847, 851-52 (E.D. Mich. 2009) (similar); *cf Pucci*, 628 F.3d at 762 (Michigan's Constitution "unquestionably establishes a unified state judicial system").

### c.   Plaintiff's remaining claims beyond application of the Eleventh Amendment

The sovereign-immunity doctrine does not, however, bar Plaintiff's suit against the individual defendants in their individual capacities, *see Ecclesiastical Order of the Ism of Am., Inc. v. Chasin,* 845 F.2d 113, 116 (6th Cir.1988), or with respect to his request for prospective relief, *see Thomson v. Harmony,* 65 F.3d 1314, 1320-21 (6th Cir. 1995).   After applying the Eleventh Amendment, therefore, Plaintiff's remaining § 1983 claims are those against the individual defendants in their individual capacities and those with respect to his request for prospective relief.[5]

---

[5] Plaintiff's § 1983 claims against PACC and against the individual defendants in their official capacities fails for another reason: Plaintiff may only assert such claims against "persons" within the meaning of § 1983.   Though "often conflated" with Eleventh Amendment immunity, *Barker v. Goodrich*, 649 F.3d 428, 433 n.1 (6th Cir. 2011), a "State is not a person within the meaning of § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65.   Nor are state officials sued in their official capacities. *Id.* at 71 ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.   As such, it is no different from a suit against the State itself.").   As with sovereign immunity, this does not affect Plaintiff's claims against the individual defendants in their individual capacities or with respect to injunctive relief. *Id.* at 71 n.10.

## 2. Plaintiff's Claims Against Schmucker and Etue in Their Individual Capacities

In order to hold the individuals liable in their individual capacities under §
1983, Plaintiff must show that they were personally involved in the alleged
constitutional deprivations. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). To
do so, "[P]laintiff must set forth facts that, when construed favorably, establish (1)
the deprivation of a right secured by the Constitution or laws of the United States
(2) caused by a person acting under color of state law." *Heyerman v. Cnty. of
Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012). "Persons sued in their individual
capacities under § 1983 can be held liable only on their own unconstitutional
behavior." *Id*; *see also Iqbal*, 556 U.S. at 676 ("Because vicarious liability is
inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-
official defendant, *through the official's own individual actions*, has violated the
Constitution.") (emphasis added).

Construing the facts in a light most favorable to Plaintiff, this Court finds
that Plaintiff's claims against the individual defendants in their individual
capacities must be dismissed. Plaintiff has simply failed to offer any facts
personally linking the individual defendants to the alleged constitutional
allegations. Outside of listing them as party-defendants, and identifying their
official title and principal place of business, Plaintiff's Complaint is devoid of *any*
specific allegation as to how *any* of the individuals' actions violated the

Constitution.  Rather, the Complaint suffers from the nearly identical conclusory and formulaic recitation of the elements as those in *Iqbal.*  For example, Plaintiff asserts that the Defendants -- unidentified -- "affirmatively participated in devising, promulgating, maintaining, supervising, updating, and/or giving the PACC Codes to the state courts and attorneys, the judgment of sentence forms, and the conviction reporting mechanisms and systems" and that "Defendants' actions and/or inactions were intentional, objectively unreasonable, egregious, excessive, reckless, and/or grossly negligent in violation of Plaintiffs' clearly established rights under the United States Constitution."  (Plf's Compl., Dkt. # 1, at ¶¶ 56-57).  Such allegations, however, are no less conclusory than those found to be deficient in *Iqbal.  See Iqbal*, 556 U.S. at 680-81 (plaintiff failed to state a claim where he alleged, among other things, that former Attorney General John Ashcroft was the "principal architect" of the allegedly discriminatory detention policy at issue and that FBI Director Robert Mueller was "instrumental" in adopting and executing this policy).

Because Plaintiff has failed to allege that the individual defendants were personally involved in the alleged constitutional deprivations, the Court dismisses Plaintiff's claims against Schmucker and Etue in their individual capacities.  Fed. R. Civ. P. 12(b)(6); *Iqbal*, 556 U.S. at 676, 680-81; *Kentucky*, 473 U.S. at 166; *Scrap Yard, LLC v. City of Cleveland*, 513 F. App'x 500, 504 (6th Cir. 2013)

24

(affirming dismissal of § 1983 claims against individual defendants where the complaint did not "set forth *any* actions that [the individual defendants] took. . . . [It provided] no details of what either [individual defendant] did beyond general allegations that both acted in their [official] roles.").[6]

This, therefore, only leaves Plaintiff with his request for prospective relief.

### 3.    Substantive Due Process (Count I)

Plaintiff's remaining substantive due process claim faces an insurmountable uphill battle. Substantive due process mandates that "governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed." *Bowers v. City of Flint*, 325 F.3d 758, 763 (6th Cir. 2003) (internal quotation marks and citations omitted). To establish a substantive due process violation -- and, for that matter, a procedural due process violation -- a plaintiff must first show that the state deprived it of a constitutionally protected liberty or property interest. *Prater v. City of Burnside, Ky*., 289 F.3d 417, 431 (6th Cir. 2002). Accordingly, claims under substantive due process "may be loosely divided into two categories: (1) deprivations of a particular constitutional guarantee; and (2) actions that shock the conscience." *Pittman v. Cuyahoga Cnty. Dept. of Children and Family Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (citations

---

[6] Because this Court concludes that Plaintiff's § 1983 claims fail on this -- and other grounds -- it declines to address Defendants' argument that the individual defendants are alternatively entitled to summary judgment on the grounds of qualified immunity.

omitted).  For non-custodial substantive due process claims, a governmental actor must either (1) intentionally injure the plaintiff or (2) arbitrarily act in the constitutional sense.  *Upsher v. Grosse Pointe Pub. Sch. Sys.*, 285 F.3d 448, 453 (6th Cir. 2002).  Refining the second prong, the Sixth Circuit does not equate "deliberate indifference" with acting arbitrarily in the constitutional sense; rather, the arbitrary conduct must be "intentionally designed to punish someone."  *Id.*

While not apparent on the face of his Complaint, Plaintiff's Response Brief clarifies that the asserted substantive right at issue here is "the right to stop widespread public access to an incorrect criminal record that labels [Plaintiff] as a child sex offender rather than what he was actually convicted of."  (Plf's Resp., Dkt. #12, at 13).  Put another way, Plaintiff states in conclusory fashion that "[g]enerating and reporting inaccurate information infringes on [Plaintiff]'s fundamental constitutional rights."  (*Id.* at 12).

In support of this assertion, Plaintiff provides a variety of general citations to "right of privacy" cases and out of circuit sex offender registration cases that are inapplicable here.  First, Plaintiff cites a myriad of cases dealing with the public disclosure of "private" information and asserts that "the very damaging and ostensibly sealed records regarding sex offenders' pasts are exactly the kind of records that merit privacy protections."  (*Id.* at 12-13).  This may be the case, but Plaintiff's Complaint does not allege that Defendants somehow disclosed

26

Plaintiff's private information -- such as his sealed sex offender records.

Second, Plaintiff's citation to various sex offender registration cases outside the Sixth Circuit for support that "the registration requirements of [the Sex Offender Registration Act] can implicate a registrant's liberty interest" is confusing and ignores the teachings of contrary Sixth Circuit precedent -- discussed below. (*Id.* at 13). Plaintiff's Complaint does not allege that he is/was falsely identified as the *wrong* kind sex offender on Michigan's Sex Offender Registry. Instead, he asserts that Defendants maintained a reporting system such that *others* wrongly interpreted PACC Codes to mean that he was a different kind of sex offender.

Third, though Plaintiff does not articulate it as such, he advocates that this Court find an impairment of liberty interest using the "stigma-plus" test -- that Defendants harmed his reputation (the stigma), plus caused some other deprivation. (*Id.*). Plaintiff cites *Fullmer v. Michigan State Police*, 207 F. Supp. 2d 650, 659-61 (E.D. Mich. 2002), for the proposition that "the stigma of being falsely labeled on the state's sexual offender registry, combined with the 'obligations and the attendant penalties for non-compliance,' was sufficient to implicate a liberty interest." (*Id.*). *Fullmer* is inapposite for several reasons: (1) it involved a *procedural* due process claim; (2) the Sixth Circuit has repeatedly held that the "stigma-plus" test only applies to *procedural* due process claims, *see Does*

27

*v. Munoz*, 507 F.3d 961, 966 n.1 (6th Cir. 2007); and (3) the Sixth Circuit reversed *Fullmer* nearly ten years ago, *see Fullmer v. Mich. Dep't of State Police*, 360 F.3d 579, 582-83 (6th Cir. 2004).[7]

The problem with Plaintiff's asserted "right" is that the Sixth Circuit expressly rejected a similarly articulated "right" in *Doe XIV v. Michigan Department of State Police*.  490 F.3d 491 (2007).  In *Doe*, the Sixth Circuit examined the interplay between Michigan's Sex Offender Registration Act and its Holmes Youthful Trainee Act (HYTA), the latter of which permitted certain juveniles to be assigned to a juvenile diversion program without entry of a conviction.  *Id.* at 494; M.C.L. § 762.11 *et seq.*  Under SORA and its subsequent amendments, juveniles eligible for diversion under HYTA for certain sex offenses are required to register as "convicted sex offenders" and information about their identities and "convictions" are published on Michigan's Public Sex Offender Registry (PSOR).  *Doe*, 490 F.3d at 496; M.C.L. § 762.14(2).  Similar to Plaintiff, the *Doe* plaintiffs argued that their mandated inclusion on the PSOR meant falsely publishing that they were convicted of a certain sex offense when they not actually

---

[7] This, unfortunately, is not the only time Plaintiff provides citations to cases that do not stand for the proposition for which they were cited.  *See, e.g.,* Plf's Resp., Dkt. # 12, at 14 (citing *Smith v. Wade*, 461 U.S. 30, 56 (1983), an Eighth Amendment case addressing the availability of punitive damages upon a showing of reckless or careless disregard or indifference to an inmate's rights or safety, for the proposition that disclosure of a sexual offender's private information carries "shame, humiliation, loss of employment . . . and a multitude of other adverse consequences.").

convicted.  *Doe*, 490 F.3d at 500.  In finding that such an asserted right is "not a fundamental right deeply rooted in our Nation's history" and thus not sufficient to trigger substantive due process protection, the Sixth Circuit "reiterate[d] that 'not all rights of privacy or interests in nondisclosure of private information are of constitutional dimension, so as to require balancing governmental action against individual privacy.'"  *Id.* (citation omitted).  *Doe* is dispositive here and mandates dismissal of the remainder of Plaintiff's substantive due process claim for failing to state a claim.[8]

Even if this were not the case, Plaintiff has put forth no evidence that *Defendants* "falsely labeled" him as the wrong kind of sex offender and Defendants are alternatively entitled to summary judgment on this claim.  He did not refute Defendants' evidence establishing that PACC Codes and M.C.L. cites, while related, are not meant to be identical.  Such an assertion is also illogical -- if they were always intended to be the same, then there would be no need for PACC

---

[8] It is also well-established that an individual does not have a privacy interest in publicly available information, like Plaintiff's criminal conviction reported as a PACC code.  *See, e.g., Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996) ("[T]here is no constitutional right to privacy in one's criminal record.  Nondisclosure of one's criminal record is not one of those personal rights that is 'fundamental' or 'implicit in the concept of ordered liberty.' . . . Moreover, one's criminal history is arguably not a private 'personal matter' at all, since arrest and conviction information are matters of public record.") (citation omitted).  There is a fundamental difference, therefore, between Defendants affirmatively holding Plaintiff out to the world as being convicted of one crime instead of another and others *misconstruing* Michigan's criminal record coding system.

Codes in the first place.[9]  Plaintiff additionally put forth no evidence contradicting Defendants' facts establishing that there is a rational basis for maintaining PACC Codes that are not identical to M.C.L. cites: not all crimes in Michigan specifically correspond to specific M.C.L. provisions; some statutes provide a general penalty provision without expressly enumerating specific violative acts; Michigan law permits prosecutors to charge under alternative theories of guilt and a person convicted under a multiple variables charge will not have the conviction reported under a code that identifies the specific subsection of the statute; and M.C.L. citations frequently change and in order to maintain consistency in criminal history records, PACC Codes do not change.  In other words, Plaintiff has put forth no such evidence that *Defendants'* actions were arbitrary.

To be sure, that *others* -- like individuals in the State of Illinois -- misinterpreted PACC Codes as meaning that Plaintiff was convicted of sexual contact with a minor might lead to a different result with respect to *those*

---

[9] The documents Plaintiff points to for this claim further buttress this point: There would be no need to translate MCL provisions to PACC codes (like on the SORA document on which Plaintiff relies) or to list "MCL citation/PACC Code" on the State Court Administrative Office's Judgment of Sentence Form if they were always intended to be the same.  Contrary to Plaintiff's assertion, moreover, the use of the "forward slash" on the latter document indicates that *either* are acceptable -- not that they are the same.  CHICAGO MANUAL OF STYLE 6.104 (16th ed. 2010) ("A slash most commonly signifies alternatives.").   And to the extent his ICHAT history indicates that he "pled guilty" to "MCL 750.520E1A," it also plainly states that this was "MISDEMEANOR CRIMINAL SEXUAL CONDUCT 4TH DEGREE (FORCE OR COERCION); it does not reference a crime dealing with contact with young children.

individuals.  In short, Plaintiff cannot show that Defendants published *incorrect* information about his criminal conviction and rather can only show that others interpreted this information incorrectly.  Plaintiff's claims against *these* Defendants cannot proceed.

This Court acknowledges -- like the Sixth Circuit in *Doe* -- that Plaintiff's "substantive due process claim presents a close question" because the relationship between PACC Codes and M.C.L. provisions appears murky enough to cause others to conflate the two.  For this point, one need not look any further than Plaintiff's ICHAT record.  (Ex. C. to Plf's Compl., Dkt. #1-3).  One the one hand, it clearly spells out that Plaintiff "PLED GUILTY" to "MISDEMEANOR CRIMINAL SEXUAL CONDUCT 4TH DEGREE (FORCE OR COERCION)." And, it references "750.520E1A," which is the PACC Code for this crime.  On the other, the ICHAT record contains an M.C.L. prefix which, if read with appropriate capitalization and parenthetical subsections through the M.C.L. prism as "M.C.L. § 750.e(1)(a)," references sexual conduct with a minor.

While Plaintiff's substantive due process claim cannot survive, the ease with which PACC Codes and M.C.L. provisions can be conflated -- regardless by whom -- is "troubling and noteworthy."  *Doe*, 490 F.3d at 491.  Plaintiff's situation does not appear to be unique as others have apparently also wrongly confused PACC Codes for M.C.L. provisions and vice versa.  *See People v. Kuchciak*, 467 Mich.

31

873, 873 (2002) (Michigan Court of Appeals erred by finding defendant's judgment of sentence referred to an incorrect statutory provision because the original judgment "permissibly referred to the appropriate section of the PACC Code" instead of the relevant M.C.L. section); *People v. Bennett*, 2012 WL 6604706, at *3 (Mich. Ct. App. Dec. 18, 2012) (remanding to amend the plaintiff's Judgment of Sentence because the PACC Code was entered into the M.C.L. citation box on the Judgment of Sentence); *see also* Lee Higgins, *Prosecutors admit mistake during 2003 conviction of Matthew Freeman, court documents say*, AnnArbor.com, March. 2, 2010, *available at* http://www.annarbor.com/news/mistakes-were-made-during-2003-conviction-of-sex-offender-prosecutors-admit-in-court-filing/ (detailing defendant's motion to accurately reflect that he was convicted of Criminal Sexual Conduct in the Fourth Degree for having sexual relations with a minor because the prosecutor mistakenly referred to the PACC Code for force/coercion). *But cf People v. Stephens*, 2004 WL 1335976, at *1 (Mich. Ct. App. June 15, 2004) (rejecting defendant's "claim[] that authorities may misconstrue his conviction" for resisting and obstructing a police officer with the more serious offense of taking a firearm from a police officer because the PACC Code for the former (750.479-B) resembles the M.C.L. citation to the latter (M.C.L. § 750.479b), noting that "PACC codes are routinely used in pleadings, and the judgment of sentence identifies the charge as "MCL

32

citation/PACC Code").

### 4.    Procedural Due Process (Count II)

"Procedural due process claims are concerned not with the deprivation of a constitutionally protected interest in 'life, liberty, or property,' but deprivation of those interests without due process of law.  When reviewing a procedural due process claim, [a court] must determine whether a protected liberty or property right is at stake and, if so, what process is due." *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 546 (6th Cir. 2012) (internal citations omitted).  Accordingly, Plaintiff must demonstrate three elements: (1) he had a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment; (2) that Defendants deprived him of this protected interest; and (3) that Defendants did not afford him adequate procedural rights before depriving him of this protected interest. *Wedgewood Ltd. P'ship I v. Twp. Of Liberty, Ohio*, 610 F.3d 340, 349-50 (6th Cir. 2010).  Plaintiff may show this third element by "demonstrat[ing] that [he] was deprived of a liberty or property interest as a result of an 'established state procedure[,]' which itself violates procedural due process rights; or (2) establishes that [Defendants] deprived [him] of a liberty or property interest 'pursuant to a random and unauthorized act' and available state remedies would not adequately compensate it for the loss that it suffered." *Id.* (citation omitted).

This claim must be dismissed for failure to state a claim.  First, and as set

forth above, Plaintiff has not identified any interest protected by the Due Process Clause of the Fourteenth Amendment. *Doe*, 490 F.3d at 500; *Prater*, 289 F.3d at 431.

Second, even if he had proffered such an interest, he has put forth no facts indicating that *Defendants* deprived him of this interest. Instead, he generally alleges only that he and others were "classified, labeled, convicted of, and/or held out to the word as having been convicted of certain crimes, in some cases as child molesters, without ever actually having been convicted of or involved in the underlying crime." (Plf's Compl., Dkt. # 1, at ¶ 67). Certainly, Plaintiff identified individuals -- i.e., those in Illinois -- in his Complaint who apparently labeled him as having been convicted of a crime of which he had not been convicted. He does not, however, identify any specific actions that the individual defendants or PACC as a state entity took against him, such as affirmatively publishing false information about him. Instead, he points his finger at the system Defendants have created: (1) PACC Codes are "supposed" to be the same as M.C.L. citations; (2) Defendants did not update PACC Codes to conform to M.C.L. citations; and (3) this caused others to identify him as the wrong kind of sex offender. This syllogism, however, does not support an inference that Defendants engaged in unconstitutional conduct. *16630 Southfield L.P.*, --- F.3d ---, 2013 WL 4081909, at *3. As the Sixth Circuit recently instructed, "the existence of obvious alternative

34

explanations simply illustrates the unreasonableness of the inference sought and the implausibility of the claims made." *Id.* Here, the obvious explanation is that PACC Codes and M.C.L. citations cannot be the same and that others unfortunately mistook them for being the same.

Third, and even assuming that Plaintiff properly alleged that Defendants deprived him of a protected right, Plaintiff has proffered no facts that *Defendants* failed to provide him with adequate procedural rights before depriving him of this protected interest; his Complaint is silent with respect to what process *Defendants* owed to him.[10]  His Response does not help either, where he generally asserts that "Defendants' procedures and remedies are inadequate to vindicate [Plaintiff]'s due process rights." (Plf's Resp., Dkt. # 12, at 16). What procedures? What remedies? Plaintiff does not specify and cannot, therefore, show that Defendants' "remedies for redressing the wrong are inadequate." *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999) (citation omitted).[11]  Plaintiff has therefore failed to state a

---

[10]  As Defendants point out, the central fallacy of Plaintiff's claim -- that Defendants are liable for mistaken acts of others -- might actually support colorable causes of action against *those* individuals. However, the question of whether, for example, Plaintiff received due process when Illinois issued a $125,000 bond and labeled him as the wrong kind of sex offender is, of course, not before this Court.

[11]  To the extent Plaintiff asserts that "it is impossible to purge the misreported conviction from the person's criminal history," (Plf's Compl., Dkt. # 1, at ¶ 20), he has again not linked this alleged bad act to *Defendants'* behavior. This also ignores the fact that the Court Order he obtained from Oakland County Circuit Court expressly provides that references to an incorrect conviction are to be

Procedural Due Process claim.

### 5.   Violation of the 14th Amendment (Count III)

Plaintiff's Third Count, Violation of the 14th Amendment for "Customs, Policies, Acquiescence, Supervision, Training, Hiring, [and] Retention" suffers from similar pleading deficiencies.   While Section 1983 authorizes certain policy/custom or training/supervision claims against municipalities and other local government units, *see, e.g. Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), none of the defendants are municipalities or other local units of government subject to such claims.   Plaintiff has put forth no such authority indicating he may pursue *Monell*-type claims against non-municipalities and, accordingly, Plaintiff's claim fails.

Even if Defendants were subject to such claims, Plaintiff's Complaint still fails to state a claim upon which relief may be granted.   "There are at least four avenues a plaintiff may take to prove the existence of a municipality's illegal policy or custom. The plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4)

---

stricken.  If the State of Michigan is not complying with this Order, Plaintiff could seek reprieve in that court.  Additionally, though Plaintiff admits that the Oakland County Circuit Court "corrected" his sentence, he asserts that it was again "reported incorrectly" as having sexual relations with an incapacitated person.  Not only do Plaintiff's corrected sentence documents state otherwise, he has similarly failed to connect this alleged failure to *Defendants*' conduct.

a custom of tolerance or acquiescence of federal rights violations." *Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009) (citation omitted).  Plaintiff must allege specific facts to establish that "the alleged constitutional violation happened '*because of*' [a specific] policy." *Graham v. Cnty. Of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004) (emphasis in original).  In other words, "[t]here must be 'a direct causal link' between the policy and the alleged constitutional violation such that [Defendants'] 'deliberate conduct' can be deemed the 'moving force' behind the violation.'" *Id.* (citation omitted).  And, with respect to the individual defendants, "[s]upervisory officials are not liable in their individual capacities unless they 'either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'" *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) (citation omitted).

As demonstrated above, Plaintiff has not alleged sufficient facts to find that a constitutional violation occurred.  Even assuming such a violation, his Complaint lacks any factual assertions linking this violation to any deliberate conduct, implicit authorization, approval, or knowing acquiescence by the individual defendants or PACC.  *Spears*, 589 F.3d at 256-57.  Accordingly, Plaintiff has

37

failed to state a claim here.[12]

## C.     Gross Negligence/Negligence (Count IV)

Having dismissed all of claims over which this Court has original jurisdiction, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claim pursuant to 28 U.S.C. § 1367(c)(3). *See, e.g., Wee Care Child Ctr., Inc. v. Lumpkin*, 680 F.3d 841, 849 (6th Cir. 2012). Accordingly, the Court dismisses Plaintiff's Count IV without prejudice.[13]

## IV. CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Plaintiff's 42 U.S.C. § 1983 claims against Defendants Chad C. Schmucker, Kristie Etue, and the Prosecuting Attorney's

---

[12] It is this Court's general practice to provide a plaintiff with an opportunity to amend his Complaint when faced with a dismissal that is readily curable because slight defects should not condemn an otherwise viable complaint. This practice need not be followed here, however, because amendment of Plaintiff's Complaint would be futile. *See, e.g., Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420-21 (6th Cir. 2000). In response to Defendants' motion, Plaintiff neither hinted at additional factual allegations he could add to save his claims from dismissal nor requested an opportunity to amend his Complaint. Accordingly, this Court declines to provide Plaintiff with such an opportunity. *See, e.g., Winget v. JP Morgan Chase Bank, N.A.,* 537 F.3d 565, 572 (6th Cir. 2008) ("The district court does not abuse its discretion in failing to grant a party leave to amend where such leave is not sought.") (internal quotation marks and citations omitted); *Lewis v. Wheatley*, --- F. App'x ---, 2013 WL 2450634, at *3 (6th Cir. June 7, 2013) (amendment is futile when, among other things, a plaintiff does not "provide[] any additional factual allegations that [it] would submit in an amended complaint").

[13] For this reason, the Court declines to rule on Defendants' argument that they are entitled to governmental immunity under Michigan law with respect to Plaintiff's Count IV. *See* M.C.L. § 691.1407 *et seq.*

38

Coordinating Council are DISMISSED with prejudice.

IT IS FURTHER ORDERED that Plaintiff's 42 U.S.C. § 1983 claims against the unnamed Defendants are DISMISSED without prejudice.

IT IS FURTHER ORDERED that Plaintiff's Gross Negligence/Negligence claim is DISMISSED without prejudice.

IT IS SO ORDERED.


Dated:        September 24, 2013        s/Gerald E. Rosen
                                        GERALD E. ROSEN
                                        CHIEF, U.S. DISTRICT COURT


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, September 24, 2013, by electronic and/or ordinary mail.

                                        s/Julie Owens
                                        Case Manager, 313-234-5135